## ALBERT SIMONPIETRI, Plff.,

### v.

## FERNANDO TORO, Dft.

---

Ponce Law, No. 291.

LIABILITY OF AUTOMOBILE OWNER.

Automobile Owner—Liability for Chauffeur's Negligence.
  1. Where the owner of an automobile is present and in charge of the car, § 1803 of the Civil Code, and not § 1804, applies and he will be held liable for the negligent acts of the chauffeur.

Simonpietri v. Toro.

Construction of Statute by Insular Supreme Court.
>    2. The construction of a Porto Rican statute by the Supreme
>    Court of the Island is not necessarily binding upon the United
>    States court, and it will follow its own decisions with regard
>    thereto.

Opinion filed January 10, **1916.**

_Mr. Frank Antonsanti_ for plaintiff.

_Mr. Chas. Hartzell_ for defendant.

_Mr. Jos. Anderson, Jr._, as _amicus curiœ._

HAMILTON, Judge, delivered the following opinion:

1. This cause now comes on to be heard upon a motion of the defendant to dismiss the case because of a recent decision of the local Supreme Court, which he cites, to the effect that an automobile owner, although present in the automobile, is not liable for the negligent acts of the chauffeur. The case in question is Alicea v. Ramón Aboy Benitez. The matter came up in the Humacao district court on demurrer, which was sustained. On appeal the decision of the lower court was affirmed. The court stated its position as follows:—"In the appeal interposed in the present case against the decision of the district court of Humacao, which absolved the defendant, Ramón Aboy Benitez, on the ground that there did not exist any cause of action against him, does not question the former doctrine of the case of Velez v. Llavina, but it is urged that this decision is not applicable because the appellee, Aboy, was driving in the automobile which

his chauffeur was driving when the chauffeur negligently caused
the injury for which damages were claimed against the owner of
the automobile.  . . .  This case is not different in any re-
spect from that of Velez v. Llavina, because the law makes the
owner of an automobile responsible for negligence or fault of his
chauffeur only when the vehicle is being utilized in an enter-
prise or business of that character. The owner is not responsi-
ble although he drives in the car at the moment in which the
negligent act occurs of his employee because the law has not im-
posed this obligation with the exceptions specifically established
to the general rule as to the responsibility for such acts or omis-
sions, therefore the decision of the district court of Humacao
was confirmed."

This Federal court has in several cases determined that where
the owner is present and in charge of the automobile, the prin-
ciple of § 1803 is presented, and not that of § 1804 of the Civil
Code of Porto Rico. Avila v. Fantauzzi, 6 Porto Rico Fed. Rep.
328 ; Fletcher v. Hernandez, 6 Porto Rico Fed. Rep. 245. The
local Supreme Court, however, has now adopted the contrary
view, and the question arises whether this court shall change its
ruling to conform to that of the local court.

2. There is no question that there are many cases in which
the decision of a local court should be followed.

"It has been held by this court that the decisions of the highest
court of a state in regard to the validity or meaning of the Con-
stitution of that state, or its statutes, are to be considered as the
law of that state, within the requirement of this section."
Bucher v. Cheshire R. Co. 125 U. S. 555, 582, 31 L. ed. 795,
798, 8 Sup. Ct. Rep. 974.

"The construction given to a state statute by the highest ju-

dicial tribunal of such state is regarded as a part of the statute, and is as binding on the courts of the United States as the text."

Leffingwell v. Warren, 2 Black, 599, 17 L. ed. 261.

"The point, then, raised here has been already decided by the courts of Rhode Island. The question relates altogether to the Constitution and laws of that state; and the well-settled rule in this court is that the courts of the United States adopt and follow the decisions of the state courts in questions which concern merely the Constitution and laws of the state." Luther v. Borden, 7 How. 1, 40, 12 L. ed. 581, 598.

The principle has been that of § 721 of the Revised Statutes, Comp. Stat. 1913, § 1538, copied from the 34th section of the original Judiciary Act of 1789, and always adhered to by the courts of the United States. This provides that "the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." There is no doubt that this applies to establish rules of property. Bucher v. Cheshire R. Co. 125 U. S. 583, 31 L. ed. 798, 8 Sup. Ct. Rep. 974; Derby v. Jacques, 1 Cliff. 425, Fed. Cas. No. 3,817. It applies also to construction of words in conveyances. Barber v. Pittsburgh, Ft. W. & C. R. Co. 166 U. S. 83, 99, 41 L. ed. 925, 933, 17 Sup. Ct. Rep. 488.

3. It is, however, settled that questions of commercial law are decided by Federal courts independently of local decisions. Swift v. Tyson, 16 Pet. 19, 10 L. ed. 871; Oates v. First Nat. Bank, 100 U. S. 239, 25 L. ed. 580. So also as to questions of general jurisprudence. Manship v. New South Bldg. & L. Asso. 110 Fed. 845; Lake Shore & M. S. R. Co. v. Prentice, 147 U. S.

101, 37 L. ed. 97, 13 Sup. Ct. Rep. 261. And so, also, as to those cases of perhaps indefinite nature, but of growing importance, which concern public policy.

4. The independence of the Federal judiciary in matters of general jurisprudence, what is sometimes called the general law of the country, has been attacked by Mr. Justice Field in a dissenting opinion in the case of Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 401, 37 L. ed. 772, 786, 13 Sup. Ct. Rep. 914. The special reason he gives for attacking the doctrine, which he confesses that he has himself followed in many cases, is the autonomy and independence of the states. It is questionable how far this would apply to Porto Rico, which is for many purposes a territory and is in no sense a state. However, the practice of such independent decision of matters of general jurisprudence by the Federal court must be regarded as settled. It is fully gone into in the Baugh Case in the opinion of Mr. Justice Brewer, speaking for the court. In that case the question involved was whether the engineer and fireman of the locomotive running along without a train were fellow servants so as to preclude the fireman from recovery from the company for injuries caused by the negligence of the engineer. This was held to be a question of general law, to be determined by reference to the authorities and the principles underlying the relations of master and servant, regardless of what might be the decisions in the local court, in that instance the courts of Ohio. While Mr. Justice Field, therefore, seems disposed to retract his earlier position, nevertheless, his earlier decision speaking for the court remains law. Thus he says in Myrick v. Michigan C. R. Co.: "Assuming that such is the purport of the decisions, they are not binding upon us. What constitutes a contract of carriage is not a ques-

Simonpietri v. Toro.

tion of local law, upon which the decision of a state court must control. It is a matter of general law, upon which this court will exercise its own judgment." 107 U. S. 102, 109, 27 L. ed. 325, 327, 1 Sup. Ct. Rep. 425.

In the case of Alicea v. Benitez, above mentioned, as decided by the Supreme Court of Porto Rico, there was a dissent, and in the principal case of Velez v. Llavina, 18 P. R. R. 657, holding the owner not responsible for the negligence of the chauffeur, there was a strong dissenting opinion by Mr. Justice McLeary, who sought to bring the Supreme Court of Porto Rico into harmony with the general principles of American jurisprudence.

5. The Civil Code of Porto Rico, commonly spoken of as the Revised Code, was adopted in 1902, but was to all intents and purposes the law of Porto Rico from the time of its adoption by Spain in 1889. In 1889 automobiles were unheard of, and in 1902, if in use at all in Porto Rico, were used to a very limited extent. They were not in the minds of the Code makers in any respect. Since then they have, on account of the impossibility of building railroads across the mountains, become the chief means of travel in the interior of Porto Rico. The beautiful roads, with their many sharp curves and grades, were built for transportation by carriages and wagons of different kinds, but for general traffic the highways are now utilized by automobiles and other power vehicles. Just as the roads have been accommodated to automobile service, the Supreme Court has sought to accommodate the Civil Code. In the United States, tourist routes have made automobile service an interstate service practically to the same extent as railroads; and there is little question that there the principles of general jurisprudence would apply to automobiles as well as to railroads. In Porto Rico the

Simonpietri v. Toro.

same reason cannot exist, of course, because it is an island separated by a thousand miles of ocean from the rest of the Union; but when Porto Rico came under the American flag it came under the American rules of public policy, and will remain so as long as it is in a territorial status. If this principle applies at all, it should apply to public roads and its vehicles, used by Americans, Porto Ricans, and foreigners alike. It is not necessary at this time to determine how far the rule may apply, but at least the court is not prepared to assent to the doctrine that the rule already established by this court is erroneous, whereby owners present and controlling their automobiles are to be held responsible for the conduct of their chauffeurs.

This is probably the first occasion upon which this court has felt constrained to differ from the local courts, and the conclusion is arrived at with regret. In case the court be considered wrong, however, the point can readily be decided by an appeal to the circuit court of appeals, to which this court is now attached, when a proper case shall arise.

It follows, therefore, that the motion to dismiss the case must be denied.

It is so ordered.